We'll call our first case of the day, United States v. John Doe. May it please the Court, my name is Tom Livingston, and I represent the appellant who, pursuant to a motion, has been permitted to be referred to as John Doe. The Court, by way of rebuttal, I'm requesting three minutes of rebuttal. The crazy part of this appeal is, as you know, Mr. Doe filed a pro se notice of appeal. As you know, the Court granted a 35B motion. The ordinary process would be, in my office, the Federal Public Defender's Office in As a matter of either goodwill or rotten luck, I was assigned to the case, partly because Mr. Doe and I have gotten to know each other well, and what I was anticipating before the developments relating to Stinson and Johnson was that a day may come when Mr. Doe and I would have a conversation about the lack of merit to his potential appeal issues. The one thing we all cringe about as federal public defenders is ever having to write an Anders brief conceding that there's no merit to somebody's appeal. Things changed. As you know, the Court granted a motion to stay the briefing schedule on the basis of a short sentence in the Stinson opinion. In Stinson, this Court recognized the need for resolution of an issue that later came. The issue was one that was foreshadowed but not resolved by a Supreme Court case called Begay, and so when the government consented to the motion to stay, and the Court granted that motion, we were in a holding pattern. It turned out that a case from our office came before this Court, Judge Fischer writing the opinion called U.S. v. Johnson. Brilliant opinion. Thank you. But Begay was decided one month after the habeas was filed here, and yet Begay was never raised in the course of any proceedings. I mean, Mr. Doe could have been Johnson and could have raised this, but he never did, and only did in connection with a 35B, which really isn't the vehicle. Well, we're going to talk about the timing of raising it, and I'll talk specifically about that moment. From any number of other cases that were on my plate that were approaching sentencing, issues involving whether things that had been regarded as crimes of violence pursuant to either the career offender guideline or things that had been regarded as violent felonies under the similar language in the armed career criminal law were on the plates of defense lawyers, not just in this circuit, but around the country. Well, first off, Mr. Doe is well-represented, so thank you for coming. But to pick up on something Judge Rendell just mentioned, I mean, your brief is very interesting and well-written, but the procedural posture here is a Rule 35B motion. A lot of it, I mean, there's a good argument that can be made anyway that we don't really are going to be considering any of that. 35B is a reduction rule based on substantial assistance. Do we need to get into Begay and all that? Judge, as you know, when I wrote the reply brief and cited Cassiano to this court, the argument that you're raising is that a 35B motion or a motion under 5K1.1, which is slightly different in its procedural posture, limits the scope of the review to only the nature of the assistance and the factors identified in 5K1.1. I've cited not just the overriding language of 5K1.1, which makes that list non-exhaustive, but Cassiano, when I'm talking to esteemed counsel for the other side, the crazy thing that Cassiano is saying is, well, you can consider factors other than substantial assistance if they're adverse to the defendant, meaning aggravating factors. Yeah, but essentially 35B is a reduction. Whatever factors are considered, it's a reduction of the sentence. Here you're really asking for that the sentence be vacated. Well, we're back to the originating theme of my two briefs, which is under 18 United States Code 3742, there are three things going on here. We're reviewing a sentence that if we do the remand may prove to be an illegal sentence, one that's higher than the guidelines that are contemplated. So when I'm writing up my statement of jurisdiction for this brief for appellant, and the three things in that is the sentence was imposed in violation of law, it's an incorrect application of the guidelines, and it's greater than the guideline term, you have a sentence here today of 180 months. A substantial assistance reduction from 262 to 180, but 92 to 115, if this guy's not a career offender, is the sentencing range. So you're asking it to be vacated. You would say it's an illegal sentence. I'm asking immediately, my remedy here, Judge, as I repeatedly say, is a summary remand or a full remand for further consideration because we do not have... But you want us, we would have to vacate the sentence as illegal if we do. That's your argument. The sentence was illegal, and therefore, we would vacate it. It's not really a 35B situation, is it? Well, it's... I don't know whether the words in the order would say we vacate the judgment of sentence, but one of the middle ground alternatives would be to remand. Like I said, when I asked for summary remand in my formal motion, the argument was we now know something we didn't know. Well, if Johnson had been decided differently, and if Johnson simply affirmed the gay, I'm sorry, affirmed Dorsey, then I'm going to be having my lawyer client call with John Doe saying, sir, I don't have anything to talk about on appeal. And then we would have been in a whole different... It just seems like the relief you're seeking is 2255 material. That's not before us. That was... Well, let's talk about... That was withdrawn. First of all, the relief we're seeking. Let me just step back, if I could, just one moment. You know, what is in it, there's a lot of unusual facets to this case. The 35B motion was filed, and it sat for a while, and I assume for good reason. And your 2255 was filed, and then that was withdrawn, and the court proceeded on 35B, and the sentence was actually reduced by 80 months, or 60 months. And then the defendant appealed. Okay. Yeah, the sentence was reduced without the gay being raised. Without the gay. But the defendant appealed. The defendant filed an appeal before Johnson. The appeal was filed within 10 days of Johnson being filed. Okay. You know, an issue could be raised. It hasn't been raised by the government, but it could be raised, and we have the obligation to always raise it, as to whether or not this appeal is even properly before our court. Yeah, the relief you're asking before us wasn't sought in the district court. Correct. So, the question is, Judges Chigaris and Rendell have questioned whether or not the relief you're asking for is proper, but I guess my question goes to, is the appeal even properly here? Well, the right to appeal from a 35B order is, there's a right. Well, if it's denied. Pardon me? But your 35B was granted. If it's denied. Yours was, yeah. Why do you have to comply? Actually, it wasn't their motion. It was the government's motion. So, the government motion was granted, reducing the sentence, and to the extent that the defendant is aggrieved by the sentence that's less than, the reduction that's less than he wanted, he appealed. He's still aggrieved. He is aggrieved. But you're not arguing that the substantial assistance wasn't sufficient. No, no, no. No, you're arguing that you should have applied Big A, and that was never argued in the district court. I'm not saying that, Judge. There would be no cause for me, and this is part of my response to the government's waiver argument, no cause for me in the district court, as counsel for John Doe, to be able to predict the specific terms of what this court's opinion in Johnson is. But the Johnson, but Johnson did. He said, oh, Big A says this, so I'm raising this, and as I said, Doe should have been Johnson. Let's go back. Dorsey said all crime, all simple assaults are crimes of violence. In simplest terms, Johnson says some are, some are not, and it depends on a set of documents and things that the Supreme Court tells us to look at. But Big A says, unless you have a violent felony like a burglary and arson and the litany, unless you have that, and based on that, Johnson said, Johnson, who's probably sitting in jail, says, wait a minute. Simple assault isn't, isn't what the Supreme Court said is required, and I'm saying Mr. Doe could have made that claim as soon as Big A came out, could have said, I'm amending my habeas and relying on Big A because this simple assault is not a violent felony. So I mean, we have, you know, there's case law in other areas that says, you know, it was out there to be, to be raised once Big A was, was filed. Correct. And you can imagine. Mr. Rubenstein, in addition, isn't one of the issues that you, this, our court has not said whether or not Big A and or Johnson is retroactive, correct? Correct. We've looked hard and found nothing to that effect. Other circuits have said they are. So don't you still have, I mean, Mr. Johnson still is serving time, has some time to go. Don't you still have an opportunity in the future to be able to raise what you're trying to raise? When we've talked about the necessity of something like what you're mentioning, the two vehicles of seeking appellate review that we've talked about, this is not me and John Doe, but me and attorneys I work with is, is the more promising path or the better path to simply wait for the event that this court is now mentioning as a possibility, which is not yet actuality, meaning will a day come when this court or the Supreme Court says that Big A related analysis extends to cases that predate Big A. So analytically, that would be an alternate way for Mr. Doe to proceed. We're saying that need not occur. And when we talk about comparing the differences in the 35B process to the 2255 process, one of the things that the Cassiano opinion from this court and another decision recently announced from the Ninth Circuit analyzes is that, first of all, the ordinary substantial assistance factors are among the range of things that the court considers in deciding, A, to grant a 35B motion, and B, once the court decides to grant a 35B motion, a larger range of factors, including aggravating factors against the defendant, meaning how bad is his criminal record, negative factors to the government, but mitigating positive factors for Frank Christian include subsequent changes that all of a sudden say the law in America says that this poor guy who got 262 months because they thought he was a career offender is no longer a career offender or was never a career offender and we just got it wrong because nobody foresaw what Big A was going to teach. So we're talking equitable remedies here and splitting hairs about the fine points between 35B process and 2255 process. I'm talking about a guy who deserves to be in jail, 92 to 115 months would be his non-career offender guideline range. Judge, one thing I want to put on the record that's not so clear from the transcript of the hearing, when I stood up in court and made my little song and dance about this guy not getting effective assistance counsel from his prior lawyer because he could have raised a motion under 4A1.3 and shoot. That was something that was discussed in chambers with the judge. It was only driven by the need to give this guy a record to take back to his BOP institution if he would get a reduction. So the court knew, the government knew I was not trying to get that remedy under that basis. That was only for give this guy some papers that he could safely go back and explain what knock on wood we were hoping for, which is the reduction that he got. All right, we will hear from you on rebuttal. Thank you. May it please the court, Rebecca Haywood here on behalf of the United States. And it's the government's position that we are here on a 35B, not a habeas. The habeas was withdrawn. In order to proceed on a habeas before this court, you would need for jurisdiction to exist, you would need to obtain a certificate of appealability. None of that was done. Rule 35B is a very limited, it's not a resentencing, it's a very limited circumstance where there is a modification to account for substantial assistance. It's not a complete resentencing. And the Supreme Court's decision in Dillon makes that expressly clear. In Dillon, the Supreme Court dealt with 3582C2 and an amendment to the crack cocaine guidelines, but the Supreme Court in Dillon analogized to 35B, noting that they were both just modifications of sentencing and not complete resentencing. And in Dillon, the Supreme Court actually rejected an attempt to go back and reopen the guidelines calculation, which is exactly what Mr. Doe is attempting to do here. He's attempting to reopen the original guidelines calculation, and there's simply no basis to do that. And again, Begay existed a year and a day before the hearing that occurred in this case. So Begay was out there. Mr. Doe could have made the argument that Mr. Johnson made. I'll note that I was the appellate attorney for the government on the Johnson case. And you were arguing that Begay didn't apply, and that was the position of the office, was it not? It was the position of the office. I was put in a circumstance. So why should Mr. Doe be on notice that your position was in error? Well, the case law, the decisions out there were being, the issue was being argued by defendants. Begay is what is the constitutional, the principles set forth in Begay were the principles that Mr. Doe was relying upon in this case. Johnson is just an interpretation of the Supreme Court's decision in Begay. And I would also note that with regard to the issue of jurisdiction, we presented it as a question of waiver because the issue of the 2255 was actually not, is not before this court. It was withdrawn. You could also state, you could also address it by way of jurisdiction. There's no jurisdiction here because it's an attempt to deal with a habeas when there was really, there was no COA granted for a habeas. Are you satisfied that we have jurisdiction to hear the appeal? No, Your Honor. To the extent that it's been presented here today, it wasn't. Period. Are you satisfied that the defendant had a right to appeal the decision of the district court on the, which granted, which in effect granted the 35B? Well, there, and for purposes of this case, we do not believe there was jurisdiction to proceed. But in some cases there are. As we noted in our jurisdictional statement, to the extent that you're, a 35B, you're talking about the extent of a departure or the extent of a reduction under this court's decision in McKnight, clearly there is no jurisdiction to review that. Hold on. Just so I can understand, you, he, if he came to this court arguing strictly Rule 35B, there would be jurisdiction, right? That's correct. I think your argument is more that his argument is a little misguided because it doesn't go toward Rule 35B. Instead, it goes to 2255, which is not before us. That's right. To the extent that the court would have considered an improper purpose or would have said something that would have been illegal at the 35B proceeding, but this, this appeal has nothing to do with what the judge did. And in fact, Mr. Doe is not contending that the judge did anything wrong. And Mr. Doe did not even raise the issue of Begay before the district court at the 35B hearing. It proceeded, there was actually a pending 2255 at the date of the hearing, but Mr. Doe decided to withdraw that. And so we're left with a procedural posture of the judge actually granting a six and a half year reduction in his sentence and an appeal was taken from that, that order. I just, just quickly read your jurisdictional statement. You said to the extent that he's contesting the amount of the decrease that we do not have jurisdiction. That's correct. As a discretionary? It's a discretionary, the amount of it is discretionary under Knight, but to the extent the court considered something illegal, you know, his race or something improper. Yeah, all right. That would make, that would have made the 35B proceeding illegal. Then there would be, then there would be jurisdiction to consider that. I'd also note that, you know, 35B and the jurisdictional statement 3742 has to be read in connection with 3582 also, 3582, the statutory text there makes very clear that the, that in the interest of finality of sentences, there can, there are only very limited circumstances which a sentence may be reopened. A 35B is one, but, you know, again, this is an attempt to collaterally attack his sentence through a Rule 45, 35B proceeding. Are there any questions, further questions? No, thank you very much. What about, I do have a question. We haven't ruled on, our court has not ruled on Begay's retroactivity, on the retroactive nature of Begay. Is it possible that Mr. Doe could be back here? Your Honor, no. We, and that's another thing, another reason why it's clear that Mr. Doe's arguments here today are not proper. With regard to a habeas, there are numerous arguments with regard to Mr. Doe, particularly, that would prevent a habeas, such as a procedural default, the government's position with regard to the career offender, as opposed to the ACCA, is that when you're talking about a sentence, that because it doesn't, the sentence actually is beneath the statutory maximum, that these claims are guidelines claims, like this Court's decision in Sapero, I believe, in which this Court stated that guidelines, misapplication of the guidelines do not rise to a constitutional claim or a complete miscarriage of justice. But if it had been an ACCA claim that actually raised the statutory minimum, the government's position is, those claims, potentially, depending on, you know, depending on different factors, including whether, you know, procedural default, those cases could proceed, but I don't. Cases in the pipeline. Yes, there are, you know, right now we have Sundbear from the Eighth Circuit, which is a career offender case, adopting the position of the government. You also have Gilbert, that Sundbear was en banc, as well as Gilbert from the Eleventh Circuit en banc, adopting the government's position. There was a recent decision, I think it's December 6th, from the Seventh Circuit, that actually held contrary to the government's position. But in terms of Mr. Doe, because he would also be at a second or successive, because he withdrew his first, he's also in a different position. And you also have the timeliness issues, you know, Begay was decided in 2008, I think April 15th, 2008, and I'd also note that you have Supreme Court decision in Sykes, which actually has clarified Begay, to some extent. You know, Sykes is a case where it dealt with fleeing and eluding statute, I believe, in Indiana, and it talked about Begay's purposeful analysis, indicating that that might not be the case. So, the government's going to have to evaluate Sykes as well as Begay, and, you know, make the arguments accordingly. But again, it's our position in this case, that procedurally, Mr. Doe is not, this is not the appropriate forum for him to be making these claims. And one other thing I'd like to add, though, too, is in Johnson, I think, including the government sometimes, everyone talks about Johnson in the government's concession. This court in Johnson based its decision based on the government's concession. In footnote 13, this court noted that it wasn't actually finding that simple assault wasn't a crime of violence, it was making that finding based on the government's concession. And in light of Sykes, you know, the government may change its position on that in the future, it hasn't yet. Thank you. Thank you. Yes, Your Honor, four points in rebuttal. The first, the determination of whether a simple assault is a crime of violence is a function of reviewing certain relevant state court documents. Those documents, if they do not rule out a potential state of mind, the state of mind of recklessness, then the potential state of mind of recklessness is the legal cause under principles flowing from Begay about why a particular simple assault may not be a crime of violence. That's why we're asking for a remand. We don't have those documents in the appellate record. Second, the Seventh Circuit case that the government cites as the one that does anticipate that or does rule that subsequent to Begay decision, applying Begay principles to a state offense extends retroactively not just to armed career criminal definition of violent felony, but career offender definition of crime of violence. That's the Welch case? The one that Welch is, I believe, mentioned in that one, Judge. That's in the government's footnote, but one that came since is something I'll give you the cite for or write a 28-J on that one. When I mentioned before that another circuit has also joined the Third Circuit in Cassiano, that circuit is the ninth. I'll provide you with that cite in a 28-J letter also. Finally, the one thing that stands as the sort of unifying theme to Mr. Doe's position is 3742, which says that if the sentence is based on what we don't right now have, a simple assault or two, one or both of which is not a crime of violence, then it's an illegal sentence and an incorrect application of the guidelines and the contingencies about whether Mr. Doe can proceed by 2255, one of those alternative things is he would proceed maybe by second petition, but the withdrawal, if you note from that record, there was a little moment when we went off the record, Mr. Doe and I, before he formally withdrew his 2255. That benefit of withdrawing it was in case of some contingency that I couldn't foresee, the one contingency that is sort of debatable as something possible is whether either the Supreme Court would rule the gay principles are retroactive or this court would rule that principles are retroactive. So we're saying this is the time, it's available now, it's lawfully permissible now, do the right thing now rather than iffy and weighty and seeing later. Thank you. All right. Thank you very much. The case is well argued.